UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

Plaintiff,

v. Cause No. 1:15-cr-00205-JCH

RAYMOND CASTILLO,

Defendant.

**MOTION TO DISMISS COUNT 3**
**OF THE SECOND SUPERSEDING INDICTMENT**

COMES NOW the Defendant, Raymond Castillo, by and through his attorney, the Robert R. Cooper Law Firm, P.C., by Robert R. Cooper, and, pursuant to the Federal Rules of Criminal Procedure 12(b)(3)(B)(v), hereby moves this Court to dismiss Count 3 of the Second Superseding Indictment for failure to state a claim.

As will be explained herein, the Conspiracy to Commit a Hobbs Act Robbery (Count 1) and the Hobbs Act Robbery charge (Count 2) underlying the § 924(c) offense alleged in Count 3 categorically fail to qualify as crimes of violence within the meaning of 18 U.S.C. § 924(c)(3)(A), the "force clause," and 18 U.S.C § 924(c)(3)(B), the "residual clause", is unconstitutionally vague under *Johnson v. United States*, _ U.S. __, 135 S. Ct. 2551 (2015). Therefore, Count 3 does not state an offense and must be dismissed.

**INTRODUCTION**

Count 3 of the Second Superseding Indictment charges Mr. Castillo with using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). Specifically, the Count alleges that the underlying "crime[s] of violence" for the 924(c) are Conspiracy to

Commit a Hobbs Act Robbery (Count 1) and Hobbs Act Robbery (Count 2) in violation of 18 U.S.C. § 1951(a). However, the Government cannot prove this charge because Conspiracy to Commit a Hobbs Act Robbery and Hobbs Act Robbery categorically fail to qualify as "crime[s] of violence."

As explained herein, the Supreme Court's recent decision in *Johnson* renders the Government's task unachievable. Under the current law of the land, Hobbs Act Robbery as defined by 18 U.S.C. § 1951(b) categorically fails to constitute a crime of violence under § 924(c)(3)(A) (the force clause) because it can be accomplished by putting someone in fear of future injury to his person or property, which does not require the use, attempted use, or threatened use of "violent force." Additionally, in light of *Johnson*, 18 U.S.C. § 924(c)(3)(B) (the residual clause) is unconstitutionally vague and cannot sustain a conviction. Therefore Count 3 of the Second Superseding Indictment must be dismissed.

## STATUTES INVOLVED

This motion primarily concerns the following two federal statutes:

**1) 18 U.S.C. § 1951(b)**

Section 1951, in pertinent part, provides:

> (1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining shall [be punished in accordance with the remainder of the statute].

**2) 8 U.S.C. § 924**

Section 924(c)(1)(A), in pertinent part, provides:

> … any person who, during and in relation to any crime of violence… for which the person may be prosecuted in a court of the United States, uses or carries a firearm, shall, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence……
>
> i. be sentenced to a term of imprisonment of not less than 5 years;
>
> ii. if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> iii. if a firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.
>
> Under § 924(c)(3), "crime of violence" is defined as follows:
>
> (1) For purposes of this subsection the term "crime of violence" means an offense that is a felony and—
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

**ARGUMENT**

The Court must dismiss Count 3, the alleged § 924(c) violation, because the predicate conspiracy to commit Hobbs Act robbery and Hobbs Act robbery offenses as defined by § 1951(b) do not qualify as "crime[s] of violence" as a matter of law.

As noted in the previous section, the relevant portion of § 924(c) defining a "crime of violence" has two clauses. The first clause—924(c)(3)(A)—is commonly referred to as the "force" clause. The other—924(c)(3)(B)—is commonly referred to as the "residual" clause. As discussed in the next sections, conspiracy to commit Hobbs Act robbery and Hobbs Act robbery under § 1951 categorically fail to qualify as "crime[s] of violence" under § 924(c)(3)'s force clause since pursuant to § 1951, the offense can be committed by putting someone in fear of future injury to his person or property, which does not require the use, attempted use, or

threatened use of "violent force." Further, § 924(c)(3)'s residual clause, post-*Johnson*, is constitutionally incapable of supporting a conviction due to vagueness. Therefore, Count 3 of the Second Superseding Indictment must be dismissed.

**I. Hobbs Act Robbery and Conspiracy to Commit Hobbs Act Robbery under § 1951(b) do not qualify as "crime[s] of violence" under the force clause of § 924(c)(3) because it can be violated without the use, attempted use, or threatened use of violent physical force.**

To determine whether a predicate offense qualifies as a "crime of violence" under § 924(c), courts use the categorical approach. *See Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013); *United States v. Serafin*, 562 F.3d 1105, 1107-08 (10th Cir. 2009); *see also United States v. Royal*, 731 F3d 333, 341-342 (4th Cir. 2014); *United States v. Acosta*, 470 F.3d 132, 135 (2nd Cir. 2006). This approach requires that courts "look only to the statutory definitions—i.e., the elements—of a defendant's [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a "crime of violence." *Descamps*, 133 S. Ct. at 2283 (citation omitted); *Serafin*, 562 F.3d at 1107; *Royal*, 731 F.3d at 341-42; *Acosta*, 470 F.3d at 135. In addition, under the categorical approach, a prior offense can only qualify as a "crime of violence" if all of the criminal conduct covered by a statute—"including the most innocent conduct" matches or is narrower than the "crime of violence" definition. *United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012). If the most innocent conduct penalized by a statute does not constitute a "crime of violence," then the statute categorically fails to qualify as a "crime of violence."

As a result, post-*Descamps*, for Hobbs Act robbery under § 1951(b) to qualify as a "crime of violence" under § 924(c)(3)'s force clause the offense must have an element of "physical force." And "physical force" means "*violent* force"—that is, "strong physical force," which is "capable of causing physical pain or injury to another person." *Johnson v. United*

*States*, 559 U.S. 133, 140 (2010) (emphasis in original). Hobbs Act Robbery and Conspiracy to Commit Hobbs Act Robbery, as defined by § 1951, do not meet this requirement because they can be accomplished by putting someone in fear of future injury to his person or property, which does not require the use, attempted use, or threatened use of "violent force."

The act of placing another in fear of physical injury, at best, constitutes a threat of physical injury to another, which plainly does not require the use or threatened use of "violent force" against another. The Fourth Circuit's decision in *Torres-Miguel*, 701 F.3d 165, is directly on point. Indeed, in that case, the Fourth Circuit unequivocally held that the threat of *any physical injury*, even "serious bodily injury or death," does not necessarily require the use of physical force—let alone "violent force."

In *Torres-Miguel,* at issue was the defendant's prior conviction for the California offense of willfully threatening to commit a crime which *"will result in death or great bodily injury to another."* 701 F.3d at 168 (citing Cal. Penal Code § 422(a)) (emphasis added). The specific question in the case was whether the statute had an element equating to a threat of "violent force" under the force clause of U.S.S.G. § 2L1.2—a clause that is identical in all relevant respects to the § 924(c)(3)(A) force clause. *Id*. Despite the "death or great bodily injury" element in the California statute, the Fourth Circuit found that the offense was missing a "violent force" element, and thus, could never qualify as a "crime of violence" under the force clause. *Id.* at 168-169. The Court blanketly held that "[a]n offense that *results* in physical injury, but does not involve the use or threatened use of force, simply does not meet the Guidelines definition of crime of violence." *Id.* at 168. The Court, in strong words, proclaimed that "<u>of course</u>, a crime may *result* in death or serious injury without involving *use* of physical force." *Id.* (emphasis added).

The *Torres-Miguel* Court, relying on several appellate decisions from various Circuits, reasoned that there are many ways in which physical injury—even death—can result without use of "violent force." *Id.* at 168-69. "For example, as the Fifth Circuit has noted, a defendant can violate statutes like § 422(a) by threatening to poison another, which involves no use or threatened use of force." *Torres-Miguel*, 701 F.3d at 168-69 (citing *United States v. Cruz-Rodriguez*, 625 F.3d 274, 276 (5th Cir. 2010)).

In reaching its decision, the *Torres-Miguel* Court also relied on the Second Circuit's decision in *Chrzanoski v. Ashcroft*, 327 F.3d 188, 194 (2nd Cir. 2003). In that case, at issue was whether a prior Connecticut conviction for third degree assault qualified as a "crime of violence" under the force clause. The Connecticut statute "require[s] the state to prove that the defendant had intentionally caused physical injury." *Chrzanoski*, 327 F.3d at 193. Nonetheless, the "Second Circuit held that [the statute] does not constitute a crime of violence…because there is a difference between causation of an injury, which is all the Connecticut statute required, and an injury's causation by the use of physical force." *Torres-Miguel*, 701 F.3d at 169 (citing *Chrzanoski*, 327 F.3d at 194) (internal quotation marks omitted).

The Second Circuit in *Chrzanoski* explained that "an individual could be convicted of intentional assault in the third degree for injury caused not by physical force, but by guile, deception, or even deliberate omission." 327 F.3d at 195. The Court elaborated that "human experience suggests numerous examples of intentionally causing physical injury without the use of force, such as a doctor who deliberately withholds vital medicine from a sick patient" or someone who causes physical impairment by placing a tranquilizer in the victim's drink. *Id*. at 195-56.

For even further support, in *Torres-Miguel*, 701 F.3d at 169, the Fourth Circuit embraced the Tenth Circuit's decision in *United States v. Perez-Vargas*, 414 F.3d 1282, 1287 (10th Cir. 2005). In that case, the Tenth Circuit "explained that although the Colorado [third degree assault] statute required [an act causing] bodily injury, imposing that injury does not necessarily include the use or threatened use of physical force as required by the Guidelines and so the Colorado crime was not categorically a crime of violence under U.S.S.G. § 2L1.2." *Torres-Miguel*, 701 F.3d at 169 (citing *Perez-Vargas*, 414 F.3d at 1287) (internal quotation marks omitted). The Tenth Circuit reasoned that "several examples [exist] of third degree assault that would not use or threaten the use of physical force: intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals." *Perez-Vargas*, 414 F.3d at 1286.

Therefore, *Torres-Miguel* and all other cases discussed above command that Hobbs Act Robbery and Conspiracy to Commit Hobbs Act Robbery, which can be accomplished by putting another in fear of physical injury, do not require "violent force." If the threat of serious bodily injury or death does not equal violent force, then certainly the threat of "physical injury" does not. Indeed, a defendant can place another in fear of injury by threatening to *poison* the person, to expose that person to hazardous chemicals, to place a barrier in front of the person's car, to lock the person up in a car on a hot day, to lock that person at an abandoned site without food or shelter—some of the very examples that the Fourth Circuit in *Torres-Miguel* as well as the other Courts mentioned above held do not constitute "violent force."[1]

[1] Hobbs Act Robbery can also be accomplished by placing someone in fear of injury to his property. This also does not require "violent force" against the property because this can be accomplished by many ways short of violent physical force, e.g. threatening to throw paint on someone's house, to spill water on one's will, or to spray paint someone's car.

Because "the full range of conduct" covered by the Hobbs Act Robbery statute does not require "violent force," it simply cannot qualify as a "crime of violence" under § 924(c)(3)'s force clause. *Torres-Miguel*, 701 F.3d at 171. And it makes no difference, even if the possibility of violating the Hobbs Act Robbery statute without violent physical force is slim. Because the possibility exists, this Court cannot legally find that Hobbs Act Robbery or Conspiracy to Commit Hobbs Act Robbery are "crime[s] of violence." Indeed, in *Torres-Miguel*, the Court did not cite to a single case in which an offense under the California threat statute was violated with the threat of poisoning or some other non-violent force; yet, the Fourth Circuit still found that because the elements of the offense left open the possibility that one could be prosecuted under the statute for the use of non-violent force, the prior offense categorically failed to qualify as a "crime of violence." *Id*. at 171. The Court should find the same here with respect to the Hobbs Act Robbery statute, which leaves open the same possibility.

## II. Section 924(c)(3)'s residual clause is unconstitutionally vague and thus cannot support a conviction under the statute.

Since Hobbs Act Robbery and Conspiracy to Commit Hobbs Act Robbery fail to qualify as "crime[s] of violence" under § 924(c)(3)(A), the force clause, the remaining question is whether the offenses can qualify as "crime[s] of violence" under § 924(c)((3)(B), the residual clause. It cannot under *Johnson*. In *Johnson*, the Supreme Court decided ACCA's "residual clause" is unconstitutionally vague. *Johnson* applies to the parallel "crime of violence" definition in § 924(c)(3)'s residual clause. Section 924(c)(3)(B) suffers from the same flaws that compelled the Supreme Court to declare the ACCA residual clause void for vagueness. Using § 924(c)(3)(B) to categorize a predicate conviction as a "crime of violence" therefore violates due process.

**A. *Johnson* expressly overruled the "ordinary case" approach to determining whether a felony qualifies as a "crime of violence."**

In *Johnson*, the Supreme Court held that the ACCA residual clause is unconstitutionally vague because the process by which courts categorize prior convictions as violent felonies is too "wide-ranging" and "indeterminate." 135 S. Ct. at 2557. As a result, the ACCA "both denies fair notice to defendants and invites arbitrary enforcement by judges." *Id. Johnson* concluded that the Supreme Court's four previous attempts to articulate a workable test to determine whether a felony falls under the ACCA residual clause had failed. *Id.* at 2558-59.

The Court began its analysis by explaining that, under *Taylor v. United States*, 495 U.S. 575 (1990), the ACCA requires the categorical approach to determine whether a particular statute qualifies as a violent felony[2]. *Id.* at 2557. Courts must assess whether a crime qualifies as a violent felony "in terms of how the law defines the offense and not in terms of how an individual might have committed it on a particular occasion." *Id*. (quoting *Begay v. United States*, 553 U.S. 137, 141, 128 S.Ct. 1581 (2008)).

The Court further clarified that the residual clause "requires a court to picture the kind of conduct that the crime involves 'in the ordinary case', and to judge whether that abstraction presents a serious risk of potential injury." *Id.* (citation omitted). The Court linked the "ordinary case" framework to *James v. United States*, 550 U.S. 192 (2007), in which it held, "[W]e do not view that approach as requiring that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony…Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *Id*. at 208

---

[2] The Court reaffirmed the vitality of the categorical approach, despite the government's and a dissenting justice's invitation to abandon it in residual clause cases. *Id*. at 2557, 2562.

(citations omitted). "As long as the offense is of a type that, by its nature, presents a serious risk of injury to another, it satisfies the requirements of [the ACCA's] residual clause." *Id*. at 209 (emphasis added, brackets supplied).

*Johnson* concluded that the process of determining what is embodied in the "ordinary case" rather than "real-world facts" is fatally flawed, rendering the ACCA unconstitutionally vague. "Grave uncertainty" surrounds the method of "determin[ing] the risk posed by the "judicially imagined 'ordinary case'." 135 S. Ct. at 2557. "The residual clause offers no reliable way to choose between…competing accounts of what 'ordinary'…involves." *Id.* at 2558 (emphasis added).

The *Johnson* Court considered and rejected different ways that a court might envision the hypothetical "ordinary case" since the statute offers no guidance. Specifically, the Court explained that a statistical analysis of reported cases, surveys, expert evidence, Google, and gut instinct are all equally unreliable in determining the "ordinary case." *Id*. at 2557 (quoting *United States v. Mayer*, 560 F.3d 948, 952 (9th Cir. 2009) (Kozinski, J., dissenting from denial of rehearing en banc)). Although earlier ACCA cases tried to rely on statistical analysis and "common sense," *Johnson* concluded that these methods "failed to establish any generally applicable test that prevents the risk comparison required by the residual clause from devolving into guesswork and intuition." *Id*. at 2559 (referring to *Chambers v. United States*, 555 U.S. 122 (2009), and *Sykes v. United States*, 564 U.S. 1 (2011)).

This flaw alone establishes the residual clause's unconstitutional vagueness. The Court, however, explained that a closely related flaw exacerbates the problem. The Court noted that the residual clause lacks a meaningful gauge for determining when the quantum of risk under the "ordinary case" of a particular statute is enough to constitute a "serious potential risk of physical

injury." *Id.* at 2558. Although the level of risk required under the residual clause must be similar to the enumerated offenses (burglary, arson, extortion, or crimes involving use of explosives), *Johnson* rejected the notion that comparing a felony's "ordinary case" to the risk posed by certain enumerated offenses cures the constitutional problem. *Id*.

The enumerated offenses failed to save the ACCA residual clause because, according to the majority, comparing felonies to enumerated offenses similarly requires resorting to "a judicially imagined abstraction." *Id*. Before courts may even start the comparison, they must first determine what the "ordinary" enumerated crime entails. But the "ordinary" enumerated crimes, *Johnson* emphasized, like any other crime, "are far from clear in respect to the degree of risk each poses." *Id*. (quoting *Begay v. United States*, 553 U.S. 137, 143 (2008)). Any attempt to figure out the "ordinary" enumerated offense requires just as much guesswork as figuring out the "ordinary" predicate offense. The Court held that such indeterminacy, unpredictability, and arbitrariness inherent in the "ordinary case' analysis is more than the "Due Process Clause tolerates." *Id*.

Thus, *Johnson* not only invalidated the ACCA residual clause, but it invalidated the "ordinary case" analysis and statutory provisions that compel such an analytical framework. In other words, the only way to apply the residual clause is to use the "ordinary case" analysis, and the "ordinary case" analysis is impossible to apply in a constitutional manner.

**B. *Johnson* means that § 924(c)(3)(B) is unconstitutionally vague.**

The statutory phrase at issue in this case is essentially the same as the ACCA residual clause[3]. To be sure, 18 U.S.C. § 924(e)(2)(B)(ii) and 18 U.S.C. § 924(c)(3)(B) are not identical[4].

[3] Courts regularly compare the similarities between the residual clause in the ACCA to the clause at issue here. (Although the comparison tends to specifically address 18 U.S.C. § 16(b), that statute is identical to § 924(c)(3)(B).) *See, e.g., Chambers*, 555 U.S. at 133, n.2 (2009) (citing circuit splits on § 16(b) in the context of a residual clause case because § 16(b) "closely resembles ACCA's residual clause") (Alito, J., concurring). *See United States v.*

But the differences have no impact on the constitutional analysis. Although the risk at issue in the ACCA is a risk of injury, and the risk at issue in Section 924(c) is a risk that force will be used, this difference is immaterial to the due process problem and has no impact on the *Johnson* decision[5]. The Court's holding did not turn on the type of risk, but rather how a court assesses and quantifies the risk[6]. That inquiry is the same under both the ACCA and § 924(c). Both statutes require courts first to picture the "ordinary case" embodied by a felony[7], and then decide if it qualifies as a crime of violence by assessing the risk posed by the "ordinary case."

---

*Ayala*, 601 F.3d 256, 267 (4th Cir. 2010) (relying on an ACCA case to interpret the definition of a crime of violence under § 924(c)(3)(B); *United States v. Aragon*, 983 F.2d 1306, 1314 (4th Cir. 1993) (same). *See also United States v. Keelan*, 786 F.3d 865, 871 n.7 (11th Cir. 2015) (describing the ACCA otherwise clause and § 16(b) "analogous"); *Roberts v. Holder*, 745 F.3d 928, 930-31 (8th Cir. 2014) (using both ACCA cases and § 16(b) cases to define the same "ordinary case" analysis); *United States v. Sanchez-Espinal*, 762 F.3d 425, 432 (5th Cir. 2014) (despite the fact that the ACCA talks of risk of injury and § 16(b) talks of risk of force, "we have previously looked to the ACCA in deciding whether offenses are crimes of violence under § 16(b).")

[4] In pertinent part, the ACCA residual clause defines a "violent felony" as an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). Section 924(c)(3)(B) defines a crime of violence as one that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

[5] See *Jimenez-Gonzales v. Mukasey*, 548 F.3d 557, 562 (7th Cir. 2008) (noting that, "[d]espite the slightly different definitions," the Supreme Court's respective analyses of the ACCA and § 16(b) "perfectly mirrored" each other). *See also United States v. Gomez-Leon*, 545 F.3d 777 (9th Cir. 2008); *United States v. Coronado-Cervantes*, 154 F.3d 1242, 1244 (10th Cir. 1998); *United States v. Kirk*, 111 F.3d 390,394 (5th Cir. 1997); *United States v. Bauer*, 990 F.2d 373, 374 (8th Cir. 1993) (describing the differences between the statutes as "immaterial" and that interpreting U.S.S.G. § 4.1.1., which uses the ACCA language, "is controlled by" a decision that interprets § 16(b)).

[6] Of course, many federal and state criminal laws include "risk" standards that employ adjectives similar to those in the ACCA and § 924(c), such as "substantial," "grave," and "unreasonable." And the Supreme Court in *Johnson* said it did not mean to call most of these into question. But, as Justice Scalia's majority opinion observed, that is because the vast majority of such statutes require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion; in other words, applying such a standard to "real-world conduct." By contrast, the ACCA's residual clause, and § 924(c)(3) too, require it to be applied to "an idealized ordinary case of the crime" and "abstract inquiry" that "offers significantly less predictability." *Johnson*, 135 S.Ct. at 2558.

[7] Both the ACCA and § 924(c)(3)(B) require courts to discern what the ordinary case of a crime is by examining the elements using a categorical approach. *See, e.g., United States v. Butler*, 496 Fed. Appx. 158, 161 n.4 (3d Cir. 2012); *Evans v. Zych*, 644 F.3d 447, 453 (6th Cir. 2011); *United States v. Serafin*, 562 F.3d 1104, 1108 (10th Cir. 2009); *United States v. Green*, 521 F.3d 929, 932 (8th Cir. 2008); *United States v. Acosta*, 470 F.3d 132, 134 (2d Cir. 2006). *United States v. Amparo*, 68 F.3d 1222, 1225 (9th Cir. 1995). Courts may not consider the factual means of committing any given offense, but must consider the nature of the offense in the "ordinary case," regardless of whether the ACCA, § 924(c)(3)(B), or § 16(b) is at issue.

Relying on *James*, the Fourth Circuit has squarely held that the "ordinary case" analysis applies when construing 18 U.S.C. § 16(b). *United States v. Avila*, 770 F.3d 1100, 1107 (4th Cir. 2014). The Fourth Circuit stated:

> [E]very set of conceivable facts covered by first-degree burglary does not have to present a serious risk of injury for it to qualify as a crime of violence. It is sufficient if 'the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another'. James, 550 U.S. at 208, 127 S.Ct. 1586. As long as an offense is of a type that, by its nature, presents a substantial risk that physical force against the person or property of another may be used, it satisfies the requirements of 18 U.S.C. § 16(b).

*Id.*

*Avila* controls here because § 16(b) and § 924(c)(3)(B) are identical[8]. Indeed, in litigating *Johnson*, the government, through the Solicitor General, agreed that the phrases at issue in *Johnson* and here pose the same problem. In noting that the definitions of a crime of violence in both § 924(c)(3)(B) and § 16(b) are identical, the Solicitor General stated:

> Although Section 16 refers to the risk that force will be used rather than that injury will occur, it is equally susceptible to petitioner's central objection to the residual clause: Like the ACCA, Section 16 requires a court to identify the ordinary case of the commission of the offense and to make a commonsense judgment about the risk of confrontations and other violent encounters.

*Johnson v. United States*, S.Ct. No. 13-7120, Supplemental Brief of Respondent United States at 22-23 (available at 2015 WL 1284964 at *22-*23). The Solicitor General was right. Section 924(c)(3)(B) and the ACCA are essentially the same and contain the same flaws. This Court should hold the government to that concession.

---

[8] Other courts likewise require the ordinary case analysis when the statutory language of § 16(b) (and thus § 924(c)(3)(B)) is at issue. *See, e.g.*, *Keelan*, 786 F.3d at 871 (relied on by the government in its Rule 28(j) letter and following the "uniform rule" of "all other circuits to have examined the issue" and adopting "ordinary case" analysis for § 16(b)); *United States v. Ramos-Medina*, 706 F.3d 932, 938 (9th Cir. 2012) (citing *James* as the source of the "ordinary case" analysis required by § 16(b)); *Van Don Nguyen v. Holder*, 571 F.3d 524, 530 (6th Cir. 2009) (considering § 16(b) and concluding that "[t]he proper inquiry is one that contemplates the risk associated with the proscribed conduct in the mainstream of prosecutions brought under the statute."); *United States v. Sanchez-Garcia*, 501 F.3d 1208, 1213 (10th Cir. 2007) (same).

Section 924(c)(3)(B), like the ACCA residual clause, thus requires the "ordinary case" analysis to assess the risk involved in a predicate offense, and how risky that ordinary case is. *Avila*, 770 F.3d at 1107; *Ayala*, 601 F.3d at 267; *Van Don Nguyen*, 571 F.3d at 530, *Sanchez-Garcia*, 501 F.3d at 1213. Since this is the identical analytical step that brought down the ACCA residual clause, § 924(c)(3)(B) cannot survive constitutional scrutiny under the due process principles reaffirmed in *Johnson*. As a consequence, the residual clause cannot be used to support a conviction under § 924(c).

**CONCLUSION**

Since Hobbs Act Robbery and Conspiracy to Commit Hobbs Act Robbery under § 1951 categorically fail to qualify as "crime[s] of violence" under § 924(c)'s "force" clause, and § 924(c)'s "residual clause" is unconstitutionally vague, no legal basis exists for convicting Mr. Castillo of Count 3.

For the foregoing reasons, Mr. Castillo respectfully requests that the Court grant this Motion and dismiss Count 3 of the Indictment.

Respectfully Submitted,

Robert R. Cooper Law Firm, P.C.
*/s/ Robert R. Cooper*
ROBERT R. COOPER
1011 Lomas Blvd NW
Albuquerque, New Mexico 87102
bob@rrcooper.com
(505) 842-8494

**CERTIFICATE OF SERVICE**

I hereby certify that on December 14, 2015, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Norman Cairns
Office of the United States Attorney
Norman.Cairns@usdoj.gov

Samuel A. Hurtado
Office of the United States Attorney
Samuel.A.Hurtado@usdoj.gov

/s/ *Robert R. Cooper*
ROBERT R. COOPER